Furniture, we'll call the next case, we'll call the next case, which is United States of America versus Finley. May it please the court, your honors, for the record, I am Karen Sirianni-Gurlock and I represent the appellant, Craig Finley. I would respectfully ask the court's permission to reserve three minutes of rebuttal time. Granted. Thank you. 16 exhibits. The jury saw 16 exhibits containing child pornography. Some of those exhibits depicted prepubescent boys being sexually tortured by adult men. One of them showed prepubescent boys engaging in orgy-like activity with each other. These images were so disturbing, so horrific, that jurors actually cried while viewing the case. That's why they are made illegal by statute and why they are also part of the government's burden of proof. There was no stipulation here, was there? We offered to stipulate, your honor, the government and the district court rejected that stipulation. Nonetheless, trial counsel still conceded in opening statement to the jury that these images were child pornography and the defense was not that the images were not child pornography or that Mr. Finley had something that he didn't know what it was. The defense was that they were child pornography, but that someone else had gotten onto his computer. But the government has, as always, the burden of proof. They go first. Anything can happen during a trial, as any of us who have been involved in them know. The government's burden is beyond a reasonable doubt. They try to cover all the bases. So going back to my original question, which was not intended to be glib, you have a very tough road to hoe here, don't you? We start with an evidentiary regime that is one of admissibility, inclusion, not exclusion, right? Yes. You start with that and then go on to the fact that this is the government's burden of proof to go forward here. And along with another presumption, which we often invoke, and that is that a jury follows a court's instructions. And was there not a limiting or cautionary instruction at some point relative to these? I'm not sure that there was, Your Honor. I thought that there was. Even if there was, Your Honor. We presume that a jury knows what they're doing. Your Honor, everything that you said is true, but none of it exempts the government from Rule 403. The government must still prove its case within the parameters of Rule 403. The evidence cannot be unduly prejudicial. Yes, all child pornography evidence is prejudicial, but some of it is more so. Unfair prejudice is, I think. I'm sorry, Your Honor. Unfair prejudice is, I think, how the rule reads, right? Yes. And, Your Honor, you said that you think I have a tough road to hoe. I must respectfully disagree. I think this is not even a close case. This is controlled by Cunningham. Isn't Cunningham a different case? No, it isn't, Your Honor. First of all, in Cunningham, the principal fault that our court found in Cunningham was that the district court did not look at the videos or the pictures. That is true. In this case, it's clear that Judge Cogill did. He looked at them, but he did not conduct a 403 weighing. Well, but he did. He stated on the record that he had looked at the videos, and he concluded that it was not unfair prejudice. Doesn't this case, I mean, it's markedly different than Cunningham. Not at all, Your Honor. And Cunningham didn't necessarily hinge on the fact that the district court judge failed to look. I've read and reread that opinion as recently this weekend, and it is carefully written to include in its reasoning at various points that the fact that the district judge there did not view the evidence. Cunningham also talks a lot, though, about the law of diminishing returns when child pornography is paraded in front of a jury. And what this court said – Your client is actually in some of the exhibits, right? His hands are allegedly in some of the videos for B, C, D, and E. All right. That's what the jury found. Okay. And some of his furniture as well is in some of the videos? That's what the jury found. Okay. That's different than Cunningham as well, right? Yes, it is. But if I may – that's a different charge. That's 2251, child one. Just a moment, please. I want to take you back to Cunningham because, with all respect to you, I think you're absolutely wrong about what Cunningham says. Included in the – one of the places, and it's not the only one, included in the opinion is, however, because the district court abused its discretion when it decided not to watch the videos before admitting them under Rule 403, its underlying Rule 403 determination is not entitled to the full range of deference that we would normally give it on appeal. That is a huge evidentiary distinction from what we have here. But a district court's 403 ruling is also not entitled to deference when there's no weighing on the record. And later on in the Cunningham opinion – if I may finish, please, Your Honor. This is a very important point. In Cunningham – Excuse me. The court drives argument. I'm sorry. Forgive me. You do not. You're experienced enough to know that. Thank you. With respect to the court, the district court, not having conducted a weighing process, and this was part of the back and forth between you and Judge Fischer a minute ago, there is a major distinction here between the court not having gone through a weighing process, which this panel may certainly conclude the court did, and the court not articulating its weighing process or its reasons on this record, which I would concede that the court did not do here. But what is the import of that for you? There's nothing for this court to review. And when you have images that are so inflammatory that jurors are crying, more than one of them, and when we know from the descriptions provided to the court that even understanding that all child pornography is prejudicial, some of this was over the top and the quantity was over the top. Part of the reason why we asked for supplemental material was so that we would have something to look at. We can make that determination and make a determination as to whether or not the district court abuses discretion in allowing the videos to be admitted. So what's the problem here? I'm not sure what you mean by what is the problem in that. What's the problem? We have enough in front of us to make this determination, and that's a determination we frequently make. And the descriptions and the reactions of the jurors speak for themselves to show the incredible prejudice and the undue prejudice, and there is a lot of discussion in Cunningham about cumulative effect. Did the government need 16 exhibits, even understanding what Judge Smith said, that they have the right to prove their case and maybe need to put some of it on? Did they need 16 exhibits, and did they need ones that were this bad? When we were offering to stipulate, we conceded, and the defense didn't deny that this was child pornography. I would just say, Ms. Gerlich, that's a different argument than you tried to make in the first part of your argument here about Cunningham. In Cunningham, though, the reasoning does not completely hinge on the failure to look at the images. There's a lot in there about cumulative effect and about the aggregate effect when you have so much, and that there's a law of diminishing returns, and that with each subsequent image that goes before the jury, the probative value decreases. And there's considerable similarity between the nature of the evidence that was offered in this case and the nature of the evidence that was offered in Cunningham and reviewed by this court. A similarity in nature, but an increase in quantity here. And under the law of diminishing returns that this court discussed in Cunningham, this was too much. And in Cunningham, this court talked about how the prejudicial value goes up the more images you see, the probative value goes down. Some of the worst of the images were shown to the jury at the end of all the exhibits. So you have the worst of the worst before the jury at a point where prejudicial value is extremely high and probative value is nonexistent. What role would you have us craft here in dealing with trials involving child pornography? There's not a role of numbers. I think it's a combination of looking at numbers and quantity. And if all 16 images were of the nature of exhibits 4A through 4E, we might not be here today. I think it's a combination. But I think looking at Cunningham, we have equal quality but greater quantity. And so really the only role is an interpretation of Rule 403 and the constitutional right to a fair trial. When you say is there a role, do you mean so many images and it's too much? Well, you agree that the district court looked at the images. Yes, no dispute on that. There's disagreement as to whether or not they made findings on the record, 403 findings. At least on the record the court said that they're going to allow the government to offer the exhibits. I mean, what do you want us to do in these cases? What kind of scales do we use to determine whether or not a district court is abused at discretion when the Commonwealth or when the United States refuses to stipulate? And isn't the difficulty that Judge Fischer has just described by implication why courts of appeals rely so heavily and review subject to an abuse of discretion, this kind of evidentiary ruling? It is, and that's the problem here. You have nothing to rely on. To have a district court simply saying this is part of the government's case and its probative value is greater than its prejudice and then jurors are crying, you don't have enough to review. You have to go to the images, descriptions of which have been provided, and this court has to make a determination whether this should go back for Judge Cohill to do all the 403 weighing or if some is so inflammatory, unduly prejudicial, that it should simply be excluded at this level. Can I ask you a question? If we were to agree with you that the videos were unduly prejudicial and reversed on counts two and three, shouldn't count ones still remain without? Well, there is a statutory interpretation argument with regard to count one. Based on the unfair prejudice issue? It would, Your Honor.  It would, Your Honor, and I certainly do not abandon the statutory interpretation issue regarding count one, and I would be happy to provide additional argument on that if the court would entertain it. We'll have you back on rebuttal, Ms. Cohen. Thank you. Thank you. Mr. Hickton. Good morning, Your Honor. May it please the Court. For the record, I am David Hickton here on behalf of the government appellee. We seek affirmance of the verdict and sentence below. Mr. Hickton, a question I have at the outset that Ms. Gerlach has given a basis for and one that has troubled me a bit throughout work on this case is that the government declined the stipulation that was requested by the defense and which would have then obviated at least some, if not most, or all of the evidence that the defense regards as offensive here. Is that something that we ought to take into account? Your Honor, I do not believe as stated the answer to that is yes, no. You should not. I would cite Old Chief for the proposition that all nine justices and Old Chief recognizing that the general rule applies that the government is entitled to prove its case. And on the specific facts of this case, we had a four-count indictment. The images which were shown were a small fraction but a necessary fraction to prove the case. So essentially then that fact of refusal to stipulate is, if not a red herring, something that we shouldn't consider. This is purely 403. This is all 403. Yes, Your Honor. Precisely. I believe that the government cannot be compelled under Old Chief to stipulate its case away. There's a legion of cases which support that proposition. But here, I think a review of the totality of the record reveals that Judge Cohill was very careful about the evidence in this case. If I can stop you a second, does the refusal to stipulate impact the court's determination as to whether or not the prejudice may have been unfair? I would concede that the offer of a stipulation may be one factor for the court to consider in that regard. But I believe under the facts of this case it doesn't apply because Judge Cohill at pretrial made a suppression ruling in favor of Mr. Finley, which dramatically affected our burden of proof in this case. Would you agree that the district court's explanation was extremely spare in terms of setting out his reasons for why he weighed the evidence as he did and reached the no unfair prejudice conclusion? If spare means inadequate, I would not agree. It could be different. It means very, very undetailed here. But I think, again, if you look at the entire record, if you look at what he said in his preliminary instructions, if you look at the fact that during the preliminary instructions he excused a juror who said that he could not hear the case based upon the description which he gave at that point, which I think flows into the whole analysis here. If you look at before Agent Botello testified, there was a description and there was a colloquy. And then after when the judge actually looked at the images, he made the fundamental and important evaluation that he believed under the rule of inclusion, as the court said, of Rule 403, that the probative value on the facts of this case outweighed the unfair prejudice, not just the prejudice. And so I think when you look at the whole appendix and look at the entire record, you see that Judge Pelley was right. I have another question then. Is there a correlation between the, I guess, amount of analysis in the judge's 403 rulings and the amount of deference we should give to those rulings? I know we're able to look at the record and make our own decision. We do have a decision here, but it may be spare. Should we be according less deference to the judge's opinion based on the fact that it's a little short? No, I think the question for this court was, was it legally adequate? And the law is very clear that he abused his discretion. No one can say that Judge Pelley. Well, the standard is very clear, but I will confess that we have not been. I've been around for 25 years and watched these cases on 404 and 403 bounce around. And this court has, on a number of occasions, kind of lectured the district courts. I can remember one reversal. But most of the time it's been you need to be more careful in explaining your reasons. But we'll review them here. But we do really, really mean it. And why shouldn't we afford less deference, whereas here we really have only a conclusion, not an explanation? Because the standard is, was Judge Pelho arbitrary, fanciful, or unreasonable? And that standard can't be met here. And I think there's a clear distinction that would take you towards progress if that's where the court wants to go. Because we agree that Cunningham has created an important crossroads. And the miscitation of it and over-reliance upon it by appellant calls upon this court to deal with this question. But there's a distinction between a 403 balancing and a 404 balancing, especially in a child porn case where the crime is the image. We're not talking about collateral behavior. We're talking about the exact behavior that caused the indictment. And in the Finley case, as Judge Chigares pointed out, we had an overlap and an integration between the production claim, where he was taking pictures of his nephew on a cell phone, revealing behavior and an objectification of 10 to 14-year-old boys, which was reflected in the very small sample of videos which were played. I think the court also has to take into account that we use restraint as the prosecution here. We're talking about 30,000 videos, hours of videos. We showed minutes with no sound. We showed a limited representative sample of the videos. And Judge Cohill at multiple places in the record reflected that he not only looked at them, which distinguishes Cunningham, but that he carefully evaluated whether their probative value outweighed their unfair prejudice. So I don't think this is a question of whether you give him less deference or more deference. I think where the court must act is to find what Cunningham tells us for the rule that goes forward. Cunningham is, we assert, limited to the narrow question of Judge Schwab's failure to look at the videos. How could the court evaluate his 403 analysis? And then the court took the extraordinary step, in my view, of admonishing the trial court for not looking at the videos, and then not looking at them themselves and relying upon descriptions to say that they were loathsome and a cesspool of evidence, which I think is unfortunate language. Here you can see in this case we can't agree upon descriptions. The descriptions we submitted to the court differ. A stipulation is going to take us down that same route. We are still entitled in these very important cases, which oftentimes are misnamed. These are not child pornography cases. That's not what the statute says. May I take you back to your characterization of Cunningham? Sure. Because if you recall, I read one of what I believed to be the relevant portions of Cunningham limiting its reach. Right. Would you agree with my characterization? I totally agree. Cunningham is limited to that. We have no problem if that's the essential holding of Cunningham. Where we have a problem is the merging of 403 and 404B analysis, which we think is unfortunate. Where we have a problem is making a description control. We have a motion pending before this court to lodge these images. What I was starting to say is these are not pornography. These are violent acts against minor children. That's, as the court said, why they're outlawed. This is a huge priority. But that's also what we had in part in Cunningham, violent acts. You cannot, you have to trust the jury. You have to believe that the jury will listen to the judge. Even in the first World Trade Center bombing, a corpse of a pregnant woman who was killed was shown to the jury. Judge Cohill used that very language in one of his evaluations of this evidence. He used the term, we have to confront sometimes a bloody corpse. He told the jury in the preliminary instructions, you're going to see things that are very disturbing. He looked at them himself. And it is accurate going forward that most of the circuits are not in line with Cunningham. And most of them do take into account for a bright line rule, if there is one, the quantity shown. Whether it's small number, representative. And that's what we try to do. And that's all this case comes down to, isn't it? Quantity. I mean, I've tried a lot of homicide cases in the old days. The nature of the evidence in those things is often very, very off-putting, to say the least. But it's a problem that we confront regularly and with appropriate evidentiary limitations, instructions, and so forth. And this court has to trust the trial court. And the trial court trusts the jury. But we don't want to migrate to the paradoxical bad result, where the more gross and obscene the conduct by the defendant is, the less we show to the jury. That is not where we want to end up. Does the court wish me to address the other two arguments that were raised? It's up to you. You have the time. I would just say, in summary, we believe there's no double jeopardy issue here, because there was a receipt and distribution. The receipt and distribution counts in the complaint. And the argument that somehow a sleeping child cannot be used to create an illegal image has been dealt with by Judge Chinn and the Levy case in the Second Circuit. Actually, the district court. I'm sorry, the district court affirmed by the Second Circuit. And this court, through the long history of U.S. versus Knox over 20 years, has an intimate familiarity with the fact that these statutes were designed to protect children and not to be read narrowly. Could you just address briefly, if there was error, is it harmless error? We believe that if the court were to conclude there was error, it is indeed harmless error, because the question presented is whether a rational jury would still convict if the images, and I believe that Appellant has only raised questions with three of them in their brief, if those images were taken out, would there still be a conviction here? And we assert there would be. Thank you very much, Mr. Hickton. Ms. Gerlach, we'll have you back on rebuttal. Thank you. Harmless error is a very high standard to overcome. As this court defined it in Cunningham, there must be a, quote, sure conviction, unquote, that the jurors were not unduly or improperly influenced by this evidence. The jurors cried, we can't meet that standard here of harmless error. Mr. Hickton said I was challenging more than the others five, or excuse me, three, and it's actually five that were the worst of the worst. Our position is that they were so inflammatory that it contaminated the whole deliberation process, the whole jury trial. As far as the motion to lodge exhibits, which the government filed on Friday, and I was unable to respond because our office was closed on furlough, but the government is asking the court to look at Exhibit 1 and Exhibit 4, each of which is a CD containing more child pornography than the jury actually saw. If this court grants the government's motion, we would object to the extent that it allows the court to view information that the jurors did not see. That would be improper. As far as the descriptions, I don't think our descriptions differ much at all. Mine are only more detailed than the government's. The major discrepancies in the descriptions that I saw were, first, on Exhibit 1A, we had a difference on the length in terms of time of that video. I had someone with me with a stopwatch. If mine was the one that's incorrect, I apologize to the court. It was inadvertent, but I don't think it makes a big difference. This was still over four minutes of material, and in Cunningham it was only two minutes and no still photographs. There were also still photographs here. The other debate between me and the government on the descriptions is that they say 4A did not contain pornography, but I say that it did. And other than that, I really don't think our descriptions are vastly different. They are only differing in detail, not in terms of the actual substance. And if the court has any more questions, I'd be happy to answer them. We have none. Thank you. Thank you. Thank you, Mr. Hickman. An interesting case, very well-argued case. We thank both of the counsel, and we're going to take a brief recess.